We'll move to our fifth case of the day. The United States v. Charles Hays, appeal number 22-32-94. Mr. Clapton's here. Good morning. Mr. Canestra, okay. Good morning, Your Honors. My name is Andrew Clapton, and I represent the appellant Charles R. Hays. May it please the Court. The government argued below that a passenger's possession alone supplies probable cause, under the automobile exception, to search not just the passenger compartment, but also the driver's entire car, including under the hood. The government has doubled down on that theory in the second sentence of its argument summary. And while the government invokes Westby, which we acknowledge applies, the government does not actually engage with our arguments that the other few factual points invoked by the district court were improper, weightless, or both. What properly remains, then, is the government's original theory that a passenger's possession alone justifies a warrantless search of a driver's entire vehicle. Respectfully, the government's theory is wrong as a matter of constitutional law, and indeed dangerous to the Fourth Amendment. A passenger's possession at the most creates probable cause to search the passenger compartment, not probable cause to take the entire car apart. I'd like to begin, Your Honors, with an important limiting principle to the automobile exception, and that is the scope of a permissible search under the automobile exception is defined not only by the object of the search, but also the places in which there is probable cause to believe that it may be found. Let me ask you a hypothetical. Suppose on this particular fact pattern the police expected, based upon what they had seen at the stash house before, that the drugs were in the trunk and they were likely in the spare tire compartment underneath the flooring of the trunk. Could they have looked in there? Possibly, Your Honor, because that case, that hypothetical that you gave, is pretty close to the facts in Acevedo. That's exactly why I'm asking you. Yes, Your Honor, but this case is anything but Acevedo. No, no, no, but Acevedo reinforces Ross, okay, and reinforces the location. I think you have, and I appreciate your candor, I think you have to answer that question I asked you, yes. And so then what distinguishes this is if that's right. Let me ask you this. Can they open the hood at all? Could they direct the hood to be opened? I would say no, Your Honor, because they don't have probable cause to search anywhere beyond the passenger compartment. Well, hold on. They could go in the trunk. Oh, under your hypothetical, I'm sorry. Well, no, I think you have to say yes to that. If not, I think you're directly contradicting Supreme Court precedent. So they have to be able to go into the trunk to look for the drugs, right? And my question is, okay, they can go in the trunk. I think that's the right answer to that. That's probably why you said yes, they can. Can they then say, sir, pop the hood too? Under your hypothetical. No, on this case, could they say pop the hood? Or do they violate the Fourth Amendment by saying just open the hood? Your Honor. And then they open the hood and then they see, you know, a baggie duct taped or something, you know, next to the windshield wiper fluid or whatever. It would be a closer case, Your Honor, certainly. Your Honor, the prior location, so first of all, the government below said that that happened earlier in the month. Second of all, there were no. It's counterfactual. It happened that morning. He was at the stash house. They were at the stash house that morning. They drove a silver Cadillac away. Then there was a car stop. And what you're challenging, as I understand, is what happened during the car stop. That's correct, Your Honor, but the officers didn't offer any reason why the particular location was a drug target and did not disclose who or what information led them to investigate. I thought the police paperwork said, hey, we're, we're, we were keeping an eye on the stash house in this drug investigation. And the, the, one of the lead people is named Chuck. We don't know who that is. And then they saw this guy go in and they matched it up with a Facebook picture. Then they direct the car stop. I don't, I don't really know what you're saying. Your Honor, that's entire. It's entirely conclusory. There's nothing. There's the who, what, where, when, why, or how. I thought it was in the police paperwork. Yes, Your Honor, but there's no, there's no evidence even explaining who or what information led them to that stash house in the first place. Who cares? What difference does it make? This court held in Bowman, United States versus Bowman, that mere suspicion of a legal activity at a particular place is not enough to transfer that suspicion to anyone who leaves the property. And that's all we have here. I don't know about that. From the police paperwork, I mean, mere, we'll see what Mr. Canestra says if they just had mere suspicion. My sense is he's going to disagree with you on that. Go ahead. Thank you, Your Honor. In its response brief, the government invokes Houghton, but Houghton is the inverse of this case. So Houghton stands for the proposition that the greater includes the lesser. Acevedo stands for the proposition that the lesser does not include the  greater. And Houghton says that when officers have probable cause to search the entire vehicle for drugs based on the driver's possession, they can also search the passenger's belongings. Here the government's theory is that when officers discover drugs on a passenger, that creates probable cause to search the entire vehicle. And Acevedo says no, and Houghton does not say otherwise. And Professor LaFave's treatise indeed instructs it would be ridiculous to treat Houghton as if it had nullified the pronouncement in Acevedo. And a contrary rule, moreover, Your Honor, would equate proximity to illegality with probable cause of illegality. And that clashes with cases like Ybarra and Heath. And it clashes with core Fourth Amendment principles. It is the driver, after all, who enjoys a reasonable expectation of privacy in his vehicle, not a passenger. So they saw him leave the stash house. I just looked at the police report. It's as plain as day. They saw him leave the stash house in the silver Cadillac. They pulled the car over. It's a methamphetamine investigation. The passenger has a methamphetamine pipe and methamphetamine on her person. And they can't search locations within the car, as Ross says, that they believe drugs could be present. That's his position? Your Honor, at most, the officers could search the passenger compartment. Which, if we go back two minutes, which would include the trunk and the spare tire compartment of the trunk. So however you define passenger compartment, it's got to include that. Well, Your Honor, the passenger compartment does not include the trunk. So they can't go in the trunk? On this fact pattern, they could not. So suppose they didn't search under the hood. All I'm doing is giving you a hypothetical. Suppose instead of searching under the hood, the first place they looked was in the trunk, and in particular, in the spare tire compartment. Is that a Fourth Amendment violation? On these facts, yes. Okay, and what law do you rely upon? We rely on Acevedo. Again, I think we disagree on the weight that we place on the police reports. We think that what's in the reports is entirely conclusory, and there's no who, what, where, why, when, or how. Suppose, Your Honor, that this was an affidavit. Are we talking about the same documents? Are we talking about the Illinois State Police Investigative Report? Yes, Your Honor. And that's conclusory? The narrative portion of that? Yes, Your Honor. So Ross instructs that the court needs to analyze probable cause similar in the way that would an affidavit, and suppose that all officers had was in what is listed in their police report with respect to the prior visit at the drug location. No court would say that provides enough corroborating information to support probable cause to search the entire vehicle, much less under the driver's hood. Okay, now you got more than the police narrative. You got the car stop and the passenger with methamphetamine on her person after the car left the stash house. Yes, Your Honor. We recognize that you have to look at the facts as a whole, but it's our position that the prior stop at the job, the suspected drug target location, isn't proper to consider. I'd like to reserve the remaining time for rebuttal, please. Okay. Thank you, Your Honor. You're welcome. May I please the court? Good morning, Your Honors. Jeff Kinstra on behalf of the United States. The discovery of contraband inside of a vehicle gives rise to probable cause to search the vehicle, and when probable cause is directed at a vehicle, the Supreme Court has recognized that officers can search all parts that could contain the contraband or evidence being sought. Is there any doubt on the factual record that the car stop occurred the same day, definitely, but not long thereafter that the silver Cadillac left the stash house? It was minutes after. Isn't that clear from the police paperwork, or am I imagining things? Yes. I'm referring to paragraph 3 of page 1 of the filing, docket entry 37. It says that at 6.02 p.m. the inspector was notified that he'd just received information that the same Cadillac that had previously been seen at a drug house was, quote, just seen at the suspected drug target location. Perhaps to clarify, there were two instances in which the car was seen at the drug target location. The first of those, it was seen where I think Your Honor was referring to earlier. The defendant's seen going into this drug house. Afterwards, the officers pull up the Facebook page of the person it's registered to, find out the person's son is named Chuck or Charles. It corresponds to the person they're investigating as well. And then on the date of this particular search, immediately beforehand, the same car that had already been seen at the drug location shows up again. They conduct the search and, of course, find methamphetamine. So your point is the car was at the stash house twice, and it was the second time that was followed by the car stop. That's correct. And the car stop occurred less than 15 minutes, I believe, after they received this information that it was just seen at the drug house. And, of course, on top of that, we have the discovery of methamphetamine inside the car, the passenger's possession of a drug pipe as well, multiple indications of evasion and concealment by both the passenger, the defendant, and the discovery of a screwdriver in the car. All these things are indications that there is contraband, in fact, inside the car. A screwdriver? Yes, Your Honor. I mean, aren't you reaching a little bit here, Mr. Kleinser, with a screwdriver? No, I don't think so, because the officers immediately recognized the screwdriver is something that could be used to conceal drugs inside a trap inside a car. Now, the defendant points out, in that respect, certainly a screwdriver can be an innocent object. In that sense, I think it's much like a digital scale. Digital scales are perfectly lawful objects, but in combination with other circumstances suggestive of drug dealing, they can certainly support probable cause. But to your point, I don't think this case relies on the screwdriver. I think it helps, but it doesn't rely on that. Now, this air filter, did they have to take the air filter off to find it? Or was it just what does the report indicate with regard to the air filter? Canada, Your Honor, I'm not sure I recall offhand. I don't think it says that they – it doesn't give any indication that they manipulated it. I mean, I just want to know how far you want to go in disabling, assuming you can open the hood, how far you can go in disabling the interior of the car if it's not visible. So I'm asking you, does the record reflect that the drugs were visible once you lifted the hood? That's my knowledge. Pardon? No, not to my knowledge. It's not clear, is it? That's correct. So could we take out the battery and see if it's underneath the battery? Yes, I believe so because in that circumstance, if you have probable cause to search the car, officers can search all parts of the car where the contraband could be found. And assuming that contraband could be found in that location, then the answer would be yes. I think Judge Flan though, I think it's pretty clear from his question. They had to take the top off the air filter somehow. Maybe they – I don't know if they used the screwdriver or they just unscrewed the lid, but I think they took the top off the air filter. I mean, it wasn't like they opened the hood and the air filter was exposed. Right, and so what the report said is that the officer found it inside the air filter. But again, that is a place within the car where contraband could be found. It could be located. And because they have probable cause to search the car, they have probable cause to search that area. Let me ask you this. We've got a screwdriver, so could we take out the upholstery in the interior window on either side, you know, where the window slides into the recesses of the door? Could you take that out? The answer would be yes. I think that is the Supreme Court's decision in Carroll where they actually sliced through the upholstery in the car to find the – I believe it was the liquor in that case during Prohibition. And the Supreme Court held that because there was probable cause to search the car, that was a lawful search because that was a place within the car where the contraband could be located. Did Chief Wheeler inform to pull the vehicle over for any traffic violation? I don't recall what his exact instructions were. I think the idea was that they would follow the car. They did observe a traffic violation, and at that point they pulled it over and, of course, found the methamphetamine because the passenger had been wanted on a warrant. So, of course, at that point they have cause to arrest her as well. I thought it was more complicated than that. I don't think the car stop doesn't seem to be an issue on appeal, but I thought the dash cam video undermined the notion that there was a traffic violation. No, and so that hasn't been raised on appeal. The district court found otherwise. The defendant argued in the district court, I believe, that there wasn't a window tint violation because the back window wasn't tinted. But what the officer's report says is that the window tint was to the passenger windows. They also observed, I believe, improper lane changes, and none of those were contradicted by the defendant's arguments. Now, when the dash cam started, the taillights worked, didn't they? By the time the dash cam turned on, that's correct. But I think what really— I mean, you've got a classic case here of allegedly swerving tinted windows. And so really the district court kind of cut through that because once the car is stopped and the passenger is found with a warrant, at that point they're certainly entitled to arrest the passenger and everything that happens from that point on— Yeah, you've got to get to the point of the car stop, though. No, and again, this isn't something that's been raised on appeal, but this court's decision in Johnson, I think, rejects that, where even if the initial stop had been unlawful, once they find the passenger in possession of methamphetamine— I'm sorry, once they recognize the passenger as someone who has a warrant, they're entitled to arrest her. During the course of that, they find the passenger in possession of methamphetamine. No matter the illegality of the original stop? That's correct. It would be an intervening cause. And that's exactly what the district court held and what this court's decision in Johnson, I believe, is the case really held in. In terms of the probable cause based on the passenger's possession of methamphetamine, this court and other courts of appeals have repeatedly recognized that the discovery of contraband inside the car, no matter who possessed by, creates probable cause to search the entire car. In McGuire, for example, it was the passenger's possession of a bag of marijuana. So in your view, the government's view, it doesn't matter whether it's the passenger or the driver. That's correct. And we read Houghton as rejecting a sort of driver-passenger distinction. I'd note that this court's decisions and the other decisions by courts of appeals haven't distinguished based on who within the car possessed it. In Cherry, for example, this court cited the D.C. Circuit's opinion in Brown and quoted that for the proposition that the discovery of contraband in the passenger compartment is a factor that strongly supports probable cause to search the entire car. Is it Mr. Clopton's point, though? I mean, I was giving him a hard time, but his point is basically, what's the limit here? And that's, I think, what some of Judge Flom's questions are. Could you dismantle the engine compartment? If you say they can open the hood, they can look in the air filter, what's the limit that the government would articulate? Right. The limit that the Supreme Court has set down is that officers are entitled to search anywhere within the vehicle where there's probable cause to believe the item could be contained. When there's probable cause directed at the vehicle, like in Carroll in the Supreme Court's decision, they were entitled to search anywhere in the vehicle where the contraband that they're looking for could be located, including there in the seat, which they sliced open, I believe. So I understand the court's concerns in that respect. This case, of course, does not present nearly that extreme example. The defendant hasn't challenged the manner in which they found the methamphetamine under the hood. His complaint, as I understand it, is that they opened the hood. But that's not consistent with this court's case law. No, no, no. More than opened the hood. They opened the hood and asked, I think, Mr. – I mean, he can correct me if I'm wrong, but I thought – I mean, he's pretty articulate on this. His point is that they not only opened the hood, but they popped open that air filter device. I didn't understand him to be raising that second point quite as clearly as Your Honor did. My thought that – I understood him to be arguing that they could only search the passenger compartment and that once they looked beyond it – Yeah, yeah, but he's saying that's beyond the passenger compartment. And I understood his argument. Perhaps I was wrong, and perhaps he'll correct me. My understanding was that his argument was that they should not have opened the hood at all. I don't recall him having argued that they improperly manipulated anything within the hood once they did that. I thought he just viewed the hood as off-limits, and that would not be correct in the government's view. Unless Your Honors have any further questions. Okay, very well.  Thank you. Mr. Clopton, we'll give you a couple of minutes. I monopolized a lot of your time. You've got some points I'm sure you want to respond to. Thank you, Your Honor. I appreciate that. So, the government below took the position that the stop was earlier in the month, but even assuming it had just taken place. This court's decisions in cases like Ingrao, so in that case, this court assigned the bare minimum weight to the fact that a suspect made furtive gestures and walked out of a gangway carrying a black bag, even assuming he had just left the house of a known narcotics trafficker. And so, even if this court were inclined to give some minimum weight to the notion that the car had just been at a suspected drug target location, without any other context about why that location was suspected or otherwise, we have mere presence at a suspected drug target location, and then after the stop, possession level quantities, 2.9 grams of methamphetamine plus a small pipe. Mr. Clopton, can I ask you a question? Is it your position that the police exceeded their authority when they opened the hood or when they looked in the air filter? Both, Your Honor, but what happened in this case is that they went all the way. They took a part under the hood. So what? So what? That's a rather intrusive search under the Fourth Amendment, considering the fact that the passenger only has a small amount of drugs and a small pipe on her purse. So we should tell police the amount of drugs. If it's a larger quantity, they can dig deeper. Small quantity, small search. Big quantity, big search. Well, to be clear, this would have been a different case if they had found distribution level quantities on it.  Because that would have been more suggestive that drugs would have been under the hood of the car. Well, that's what I'm saying. Do we need to tell police? I mean, how do we instruct police? Well, if you, on the side of the road, 2 o'clock in the morning, decide that this is a distribution quantity, you can look for distribution quantities of drugs. Now, if you have distribution quantity of drugs, a kilo won't fit in an air vent, so you can't look. You see how ridiculous it becomes? Police officers have no idea what they can do. What they'll do is they'll tow the car, they'll get a warrant, right, and they'll search the car. That's right, Your Honor, and that's what they should have done here. Even crediting the prior location. But that's what they'll have to do in every case, which unequivocally is not the law. Your Honor, the only case that either party has cited that analyzed whether a passenger's possession alone justifies searching under the hood, for example, said no. And the mere fact that a visit, officers in the report, they didn't say that Mr. Hayes had exited the vehicle with drugs. They didn't see him carrying a paper bag like they did in Acevedo. He just made a stop, and according to this court's precedence, that fact, even if you consider it, is entitled to minimum weight. So can I summarize what I think your point is? I mean, I think you were clear on it in your brief. You wrote a good brief. I think your point is that there's new ground being broken here when you start talking about opening the hood and looking in component devices under the hood because that is, as you frame it, that's not fairly considered the passenger compartment. It's not fairly akin, this is me, not you, but it's not fairly akin to that area in the trunk that I was referring to, and that's your client's position. That's what he's got here. He's got the police kind of breaking new ground, popping the hood up, and now starting to look through component devices, and that's the Fourth Amendment problem. Sure, they can maybe do an inventory search. Nobody's argued that. Mr. Canestra hasn't argued that. Maybe they can go get a warrant. He hasn't argued that, and your point is that the Fourth Amendment violation occurred by popping the hood and going through component devices, and that's new ground. I would agree, Your Honor. That's what you're saying. Okay, any final point you want to make? I would just note, Your Honor, that there's really no nexus here. If you look at the facts, I understand that we have to look at them as a whole, but if you look at the facts as to Mr. Hayes, a 13-year-old conviction just being seen at a suspected drug target location, that's not the stuff of which probable cause is made, and possession-level quantities on the passenger's person with no indication that those would be under the hood, for example, it's just not enough for probable cause. So unless this Court has any other questions, I would rest. Okay, very well.